**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALEXANDER MOSKOVITS,

Plaintiff,

vs. Case No. 2020-____

BANK OF AMERICA N.A.,

SCHOEMAN UPDIKE
KAUFMAN & GERBER LLP,

BETH KAUFMAN,

SILVIA LARIZZA,

CALVIN GRIGSBY,

ROGER BERNSTEIN,

BARRY OSTRAGER,

(sued individually and as a Justice of the
Supreme Court of the State of New York),

and DOES 1 through 10, inclusive,

Defendants. **JURY TRIAL DEMANDED**

_______________________________________/

# VERIFIED COMPLAINT

Plaintiff, Alexander Moskovits (Plaintiff), hereby files Complaint against Bank of America, N.A. (BOA), Schoeman Updike Kaufman & Gerber, L.L.P., (Schoeman), Beth Kaufman (Kaufman), Silvia Larizza (Larizza), Calvin Grigsby (Grigsby), Roger Bernstein (Bernstein), Barry Ostrager (Ostrager), and DOES 1 through 10 (including but not limited to the individuals who here constituted the "Court Administration" as entitled by Ostrager on 10/8/20).

## I. NATURE OF THE ACTION

1. This action for damages involves *Star Chamber* proceedings instituted by Justice Barry Ostrager (Ostrager) and the "Court Administration" of the State Supreme Court, County of New York, which "fraud on the court" sealed an entire commercial case. *See* Exhibit A (Docs. 141 and 169, *Moskovits v. Grigsby et al.*, Index No. 650617/2019). Plaintiff alleges that the private and public defendants aided and abetted each other in committing a "fraud on the court" that grossly violates the First Amendment to the U.S. Constitution and the Law of Nations, *inter alia.* The sealing also violates the remand order by U.S. District Court Judge Vernon S. Broderick, *see* 2020 WL 3057754 (6/9/20), whose order could not have contemplated a remand to a judge like Ostrager with a partner in Brazil related to the Brazilian Federal Senator who signed a critical document ignored by Ostrager to dismiss the case, ***after*** creating a *Star Chamber* sealed without "good cause." *See* Exhibit A (Doc. 141) (*sua sponte* order sealing case and restricting access to "Chambers" as to Plaintiff's demand for disclosure of extrajudicial relationships) (9/2/20) (day after letter filed asking that Ostrager disclose all of the extrajudicial relationships between him and/or his related entities, case counsel and the parties, and/or related entities). *See* Exhibit B (Doc. 135) (9/1/20). Ostrager committed another "fraud on the court," when he falsely claimed in a *post hoc* order that the "Court Administration" had directed the entire "file" sealed to the public due to ***non-existent*** "threatening … filings by plaintiff." *See* Exhibit A (Doc. 169) (10/8/20). All of the Defendants aided and abetted the gross deprivation of rights.

## II. JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, *inter alia.* Jurisdiction is premised upon 28 U.S.C. §§ 1331, 1332, and 1350.

3. Venue is appropriate in this forum as all of the acts complained of took place within the Southern District of New York. *See* 28 U.S.C. § 1391.

## III. THE DAMAGES AND THE EXEMPLARY DAMAGES

4. In the underlying action, *Moskovits v. Grigsby*, *et al.*, Supreme Court Index No. 650617/2019, the Plaintiff claims no less than $7 Million in damages based upon the compensation formula promised to Plaintiff by BOA's *de facto* agent Grigsby. *See Moskovits v. Grigsby*, 2020 WL 3057754, *2 (6/9/20) ("Moskovits provided Grigsby with a loan structure which would allow Grigsby and BOA to secure credit for sub-sovereign state transactions guaranteed by the Brazilian Government, and provided Grigsby with potential clients for such transactions. …For Moskovits's work, Grigsby promised compensation, valued at 35% of 1% of the transaction value for a transaction value over $500 million, or 35% of 2% for a transaction value under $500 million. ...Moskovits further alleges that three deals totaling $1.9 billion were consummated by Grigsby and BOA, using his financial structure. To date, Moskovits has not received any compensation in relation to these deals.") (*citing* Complaint) (remanding case to Supreme Court). Over two months after the sealing, Ostrager ignored a document signed by the Brazilian Senator related to his Law Partner, other material facts, and the Law to dismiss the case. *See* Exhibit C (Doc. 171) (11/12/20).

5. The institution of *Star Chamber* proceedings entirely sealed to the public without cause constitutes a violation of basic constitutional rights and universally recognized human rights. *See Levy v. Weksel*, 143 F.R.D. 54, 56 (S.D.N.Y. 1992) ("Article 10 of the United Nations Universal Declaration of Human Rights, the development of which was led by the United States and which was adopted by the General Assembly on December 10, 1948, states: 'Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations'"). To achieve specific and general deterrence (*i.e*., to deter these specific defendants and to prevent future violations of federal law through a reoccurrence of such a flagrant abuse of judicial power), the exemplary damages must be set at a very high value, as a nominal sum would have no deterrent effect. Plaintiff suggests a high value for each day to which he has been subjected to a *Star Chamber* sealed to the public in a matter involving two close cronies of former President Bill Clinton (Grigsby and Jude Kearney), approximately *$2 Billion* in guaranteed credit agreements executed between BOA and corrupt Brazilian public officials, all of whom have either been imprisoned or criminally charged in Brazil, and the attempted murder of Plaintiff for having protested the misappropriation of his unique work to close deals via *kickbacks*.

## IV. THE PARTIES

6. Plaintiff ALEXANDER EUGENIO MOSKOVITS is a human being, *júris sui*, domiciled in Brazil, and bestowed with certain inviolable human rights.

Plaintiff was born in Brazil in 1964. Plaintiff was certified as a U.S. citizen at birth while inside of a Mexican prison in 1983 at age 19 to become eligible for a Treaty on the Execution of Penal Sentences. Plaintiff is a Brazilian "alien."

7. Defendant BANK OF AMERICA, N.A., a citizen of North Carolina, operates as a Bank, having done business as "Bank of America Merrill Lynch," which association-in-fact operated as a division of Bank of America Corporation dedicated to multinational investment banking headquartered in New York City.

8. Defendant SCHOEMAN UPDIKE KAUFMAN & GERBER LLP is a law firm with offices located at 551 Fifth Ave., 12th Floor, New York, NY 10176, which partnership has represented the Defendant BANK OF AMERICA, N.A., during the relevant time period.

9. Defendant BETH L. KAUFMAN, J.D., ESQ. is an individual lawyer practicing in the State of New York through her office located at 551 Fifth Ave., 12th Floor, New York, New York 10176, who has also represented the Defendant BANK OF AMERICA, N.A., during the relevant time period.

10. Defendant SILVIA LARIZZA, J.D., ESQ. is an individual lawyer practicing in the State of New York through her office located at 551 Fifth Ave., 12th Floor, New York, New York 10176, who has also represented the Defendant BANK OF AMERICA, N.A., during the relevant time period.

11. Defendant CALVIN B. GRIGSBY, J.D., ESQ. is an individual lawyer residing in and practicing from the State of California through his home office located at 2406 Saddleback Dr., Blackhawk, California 94506.

12. Defendant ROGER J. BERNSTEIN, J.D., ESQ. is an individual lawyer practicing in the State of New York through his office located at 535 Fifth Ave., 35th Floor, New York, New York 10017, who has represented the Defendant CALVIN B. GRIGSBY, J.D., ESQ. during the relevant time period.

13. Defendant BARRY R. OSTRAGER, J.D., ESQ. is an appointed Justice of the Supreme Court of the State of New York, County of New York, and an individual lawyer who practiced in New York as a Partner and Chief of Litigation for Simpson Thacher & Bartlett LLP, where he worked for over forty (40) years. His partnership published that it "regularly" advised the named BOA defendant in www.stblaw.com. His partnership is headed in São Paulo, Brazil by a relative of the former Brazilian Senate President (2013), who signed a document ignored by the Defendant Ostrager to lawlessly dismiss the sealed lawsuit in its entirety. After U.S. District Judge Vernon Broderick remanded the case to state court, *see Moskovits v. Grigsby*, *supra*, 2020 WL 832468 (S.D.N.Y. February 20, 2020), Justice Ostrager was assigned to *Moskovits v. Grigsby*, *et al.*, Supreme Court Index No. 650617/2019, upon BOA counsel, Kaufman, filing for a referral of the case to the "Commercial Division" of the Supreme Court. Ostrager is sued both individually and as a Justice of the Supreme Court of the State of New York.

14. The names and capacities of the Defendants DOES 1-10 are presently unknown to Plaintiff, who sues them by such fictitious names. The DOES include but are not limited to the individuals constituting the "Court Administration," as they have been entitled by Defendant BARRY R. OSTRAGER, J.D., ESQ.

## V. RELEVANT BACKGROUND

15. Plaintiff adopts as correct the summaries of the "procedural history" and the case "background" provided by the Honorable U.S. District Court Judge Vernon S. Broderick, when the Court remanded the case to the Supreme Court. *See Moskovits v. Grigsby*, 2020 WL 832468 (S.D.N.Y. 2/20/20). Judge Broderick wrote in his *Opinion and Order* remanding the case, as follows:

> Plaintiff Alexander Moskovits brings this action against Defendants Calvin Grigsby, Bank of America, N.A. ("BOA" or "Bank of America"), Raimundo Colombo, and Jorge Siega, asserting claims of unjust enrichment, and breach of contract. Before me is Plaintiff's motion to remand this matter to state court, where it was originally filed. Because it is within my discretion to remand a case to state court where, as here, the court loses the bases for its jurisdiction under 28 U.S.C. § 1441(d), and because I find that Defendant Siega was not fraudulently joined to the case, negating subject matter jurisdiction under 28 U.S.C. § 1332(a), Plaintiff's *motion to remand to state court is GRANTED*.

### ***Procedural History***

> Plaintiff commenced this action by filing a *pro se* summons and complaint in New York State Supreme Court, New York County, on December 26, 2018 ("State Court Action"). The State Court Action was filed against Defendants Grigsby; BoA; Raimundo Colombo ("Colombo"), Governor of the State of Santa Catarina, Brazil, in his individual capacity; and Jorge Siega ("Siega"). The State Court Action was also filed against the Federal Republic of Brazil; The State of Santa Catarina, Brazil; the State of Maranhao, Brazil; and the State of Mato Grosso, Brazil. On the same day, Plaintiff filed a *pro se* summons and complaint in this Court against the same Defendants (the "Prior SDNY Action"), *Moskovits v. Grigsby et al.*, 18-cv-12281 (CM) (Dec. 26, 2018). The Prior SDNY Action was assigned to Chief Judge Colleen McMahon, who denied Plaintiff's *in forma pauperis* application, and dismissed the case without prejudice when Plaintiff failed to pay the filing fee. On May 6, 2019, the State Court Action was removed to the Southern District of New York by Defendant Federal Republic of Brazil under 28 U.S.C. § 1441(d). On May 7, 2019, Plaintiff filed a notice of voluntary dismissal dismissing the removing party Federal Republic of Brazil; the State of Santa Catarina, Brazil; the State of Maranhao, Brazil; and the State of Mato Grosso, Brazil. The parties remaining in the action are Plaintiff Moskovits, a resident of Brazil; and Defendants Grigsby, a citizen of California; Bank of

America, a citizen of New York; Siega, a citizen of Brazil; and Colombo, a citizen of Brazil. On May 14, 2019, Plaintiff filed a motion to remand the action to state court … (Doc. 12.) Defendant Grigsby filed his opposition on June 5, 2019, (Doc. 18), BoA filed its opposition on June 17, 2019, (Doc. 20), and Moskovits filed his reply on July 19, 2019, (Doc. 30). …

*See Moskovits v. Grigsby*, 2020 WL 832468, *1 (footnote and citations omitted);

*Moskovits v. Grigsby*, 2020 WL 3057754 (6/9/20) (correcting Bank citizenship).

Judge Broderick wrote the "background" in his "Opinion and Order" as follows:

***Background***

On February 18, 2011, Defendant Grigsby contacted Plaintiff Moskovits to discuss potential business opportunities relating to oil in Brazil. (Compl[aint] ¶¶ 18-20.) Moskovits provided Grigsby with a loan structure which would allow Grigsby and BoA to secure credit for sub-sovereign state transactions guaranteed by the Brazilian Government, and provided Grigsby with potential clients for such transactions. (Compl[aint] ¶¶21-29.) For Moskovits's work, Grigsby promised compensation, valued at 35% of 1% of the transaction value for a transaction value over $500 million, or 35% of 2% for a transaction value under $500 million. (Compl[aint] ¶¶33, 53-54.) The parties frequently corresponded about the potential transactions by email. Between August 1 and 3, 2011, Grigsby traveled to Brazil to meet with the potential borrowers. (Compl[aint] ¶ 44.) Moskovits arranged for meetings with public officials and representatives of the public utility companies. (Compl[aint] ¶¶ 39-44.) These meetings were attended by, among others, Grigsby, Moskovits, and Siega. (Compl[aint] ¶¶ 45-46.).

In the weeks following Grigsby's visit, Moskovits continued to work on the deal, including offering to deliver the Memorandum of Understanding from Grigsby to CELESC, the state-owned electric utility in Santa Catarina. (Compl[aint] ¶ 55.) However, Grigsby became confrontational in his responses, and evaded signing any compensation agreement with Moskovits. (Compl[aint] ¶¶ 59–62, 64–65, 67, 71–72). Grigsby also warned Moskovits against contacting CELESC, and cut off Moskovits's @grigsbyinc email address. (Compl[aint ¶] 59.) Moskovits attempted to discuss the potential CELESC deal, valued at $400 million, with Siega, who denied any knowledge of the deal, despite his presence at the meetings and his presence on many of the emails between Grigsby and Moskovits discussing the deal. (Compl[aint] ¶ 57.) Moskovits alleges that he was purposefully cut out of the deal.

Bank of America and the State of Santa Catarina signed a $726 million credit agreement on December 27, 2012, allegedly using Moskovits's finance structure. (Compl[aint] ¶ 73.) Moskovits further alleges that three deals totaling $1.9 billion were consummated by Grigsby and BOA, using his financial structure. (Compl[aint] ¶¶ 92–93.) To date, Moskovits has not received any compensation in relation to these deals."

*See Moskovits v. Grigsby*, 2020 WL 832468, *2 (2/20/2020) (brackets added).

16. Ostrager's *sua sponte* Order sealed the case on September 2, 2020 - the day after Plaintiff filed a letter demanding disclosure of extrajudicial relationships among Ostrager, his entities, counsel, and the parties, including BOA, which Bank has done business under the name "Bank of America Merrill Lynch," and/or their related entities. *See* Exhibit B (Doc. 135) (disclosure demand) (9/1/2020); Exhibit A (Doc. 141) (order sealing entire case and restricting access to Doc. 135 to "Justice Ostrager's Chambers") (9/2/2020). The Order reads in full as follows:

The County Clerk is directed to seal this case (all past and future entries) to everyone **except** the Court and the parties to this action. The County Clerk is also directed to seal NYSCEF Document No. 135 to the public, all parties to the action, and to the Court except for Justice Ostrager's Chambers."

*See* Exhibit A (Doc. No. 141) (9/2/2020) (bold in the original).

17. The order sealing the case and restricting access to a disclosure demand to Chambers created a *Star Chamber* and a disqualifying impropriety divesting the judge of jurisdiction. All of the state actors thus lost their cloak of immunity. *See Wilcox v. Supreme Council of Royal Arcanum*, 210 N.Y. 370, 377-378 (1914) ("In this state, the statutory disqualification of a judge deprives him of jurisdiction."); *see also* 22 NYCRR §§ 100.2, 100.3 (disqualification statutes).

18. Justice Ostrager issued another sealing order earlier that same morning on the same date. That earlier "Order Directing Sealing" reads in full as follows:

> The County Clerk is directed to seal NYSCEF Doc. No. 135 as it contains personal information relating to this Court that has no relevance to these proceedings.

*See* Exhibit D (Doc. 136) (9/2/2020). Ostrager failed to make disclosure that his multinational partnership published in www.stblaw.com that it has "regularly" advised "Bank of America Merrill Lynch," perhaps earning millions in fees, and that, through his partner Grenfel Calheiros, his partnership operates in Brazil. Ostrager ignored a critical document signed by his law partner's relative, Senator Renan Calheiros, to lawlessly dismiss Plaintiff's meritorious $7Million lawsuit.

19. Defendants Kaufman, Larizza, and Schoeman, with reckless disregard for the truth, falsely denied that a document signed by Senator Renan Calheiros to expressly authorize one of the BOA agreements either referenced BOA or any of the BOA agreements. *See* Exhibit E (Doc. 167) at p.8 ("Moskovits' exhibit does not reference BANA or any of the loan agreements at issue.").

20. Ostrager dismissed the meritorious lawsuit ignoring the official Senate document signed by his law partner's relative, Senator Renan Calheiros, *which particularized the guarantee structure contributed by Plaintiff*, and also ignoring the press release by "Special Counsel" for BOA (Milbank), who worked on all of the credit agreements at issue, which described the private credit agreements with Brazilian states as unprecedented.

21. The later Sealing Order of that same date, *see* Exhibit A (Doc. 141), sealed the entire case and restricted access to "Chambers" as to Plaintiff's demand for the "full disclosure" of extrajudicial transactions/relationships, *see* Exhibit B ("Document No. 135"), which reads in relevant part, as follows:

> Plaintiff demands the ***full disclosure*** of the following transactions pursuant to NY law. *See also* 28 U.S.C. § 455(e) (full disclosure of potential grounds for recusal must be made on the case record). Disclosure required must include but not be limited to any present or prior mortgagor-mortgagee relationship, any present or prior lender-borrower relationship, any present or prior buyer-seller relationship, or ***any*** present or prior relationship.
>
> **<u>IN RE: BARRY R. OSTRAGER</u>**
>
> (1) any and all transactions of any kind involving **BARRY R. OSTRAGER** and any Bank of America entity;
> (2) any and all transactions of any kind involving **BARRY R. OSTRAGER** and any counsel or any entity related to any counsel;
>
> **<u>IN RE: QUESTROYAL ENTITIES</u>**
>
> (3) any and all transactions of any kind involving **QUESTROYAL II LLC** and any Bank of America entity;
> (4) any and all transactions of any kind involving **QUESTROYAL II LLC** and any counsel or any entity related to any counsel;
> (5) any and all transactions of any kind involving **QUESTROYAL NORTH** or **QUESTROYAL NORTH LLC** and any Bank of America entity;
> (6) any and all transactions of any kind involving **QUESTROYAL NORTH** or **QUESTROYAL NORTH LLC** and any counsel or any entity related to any counsel;
> (7) any and all transactions of any kind involving **QUESTROYAL FINE ART, LLC** and any Bank of America entity;
> (8) any and all transactions of any kind involving **QUESTROYAL FINE ART, LLC** and any counsel or any entity related to any counsel;
> (9) any and all transactions of any kind involving **QUESTROYAL STUD** (or any other **QUESTROYAL** entity) and any Bank of America entity;
> (10) any and all transactions of any kind involving **QUESTROYAL STUD** (or any other **QUESTROYAL** entity) and any counsel or any entity related to any counsel;

**IN RE: NEW YORK THOROUGHBRED BREEDERS, INC.**

(11) any and all transactions of any kind involving **NEW YORK THOROUGHBRED BREEDERS, INC.** and any Bank of America entity;
(12) any and all transactions of any kind involving **NEW YORK THOROUGHBRED BREEDERS, INC.** and any counsel or any entity related to any counsel;

**IN RE: SIMPSON THACHER & BARTLETT LLP**

(13) any and all transactions of any kind involving **SIMPSON THACHER & BARTLETT LLP** and any Bank of America entity;
(14) any and all transactions of any kind involving **SIMPSON THACHER & BARTLETT LLP** and any counsel or any entity related to any counsel;

**IN RE: THE AMSTON LAKE COMPANY**

(15) any and all transactions of any kind involving **THE AMSTON LAKE COMPANY** and any Bank of America entity;
(16) any and all transactions of any kind involving **THE AMSTON LAKE COMPANY** and any counsel or any entity related to any counsel;

**IN RE: ALL REAL ESTATE TRANSACTIONS**

(17) any and all transactions at pp.10-20 ("Properties") of the 68-page report in re: "BARRY R. OSTRAGER", which involved any Bank of America entity, including but not limited to the low value transactions in Connecticut.

***I respectfully advise Your Honor that I have initiated a full investigation of this trial court and all of its extrajudicial affairs***."

(bold in the original).

22. Ostrager disregarded 22 NYCRR § 216.1(a) ("Except where otherwise provided by statute or rule, a court ***shall not*** enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof") (emphasis added), by sealing the entire case ***without any cause***. *See* Exhibit A.

23. Plaintiff filed timely notice of appeal in the Supreme Court on or about September 21, 2020, and subsequently moved in the First Department for a stay of the proceedings pending appellate review of the Order sealing the entire case and the concomitant judicial disqualification issue.

24. On October 7, 2020, First Department Judge Dianne Renwick referred Plaintiff's motion for a stay to a full panel, setting October 16, 2020 as the filing due date for any opposition, October 23, 2020 as the filing due date for any reply.

25. On October 8, 2020, Ostrager issued a *post hoc* order *sua sponte*:

***The Court Administration directed that the entire file be sealed*** except to the parties to the action and the Court ***because of the inflammatory and threatening nature of some of the filings by plaintiff***.

*See* Exhibit A (Doc. 169) (emphasis added).

26. On October 16, 2020, Kaufman, Larizza, Schoeman, and Bernstein relied on Doc. 169 in their oppositions and failed to prevent a continuation of the *Star Chamber*. Defendants have aided and abetted rather than prevent the sealing in violation of the U.S. Constitution and the Law of Nations. Bernstein, acting on behalf of Grigsby, falsely submitted that the "decision to seal the case file is well-grounded in ***the scurrilous and highly personal attacks*** being ***filed*** by Plaintiff" (emphasis added). Neither Ostrager in his order (Doc. 169) nor any Defendant identified any "***inflammatory and threatening … filings by plaintiff***" because ***there are no such "filings by plaintiff."*** The "fraud on the court" is conclusively established by the Plaintiff's "filings" themselves, even filed in federal court by the Republic of Brazil without redactions per the public policy of transparency.

27. On October 23, 2020, Plaintiff filed his reply submitting that the Order dated October 8, 2020 was "*post hoc* rationalization for the sealing provided for the first time since the September 2, 2020 sealing (Doc. No. 141) appealed from, but without citing any '***inflammatory and threatening … filings by plaintiff'*** ***because none exist***." Plaintiff further submitted that the adjectives used were "***dictated***" by defendant Kaufman in qualifying Plaintiff's ***off-the-record e-mails***. *See* Exhibit F (affirmation of Kaufman) (Doc. No. 125), p.2, fn.2 ("***plaintiff's emails contain baseless inflammatory accusations and threats, which should not be made part of the public docket. We will provide those to the Court if it wishes to review them in camera***") (emphasis added).

28. On October 6, 2020, Plaintiff filed a letter advising that the Defendants are "committing a '*per se*' violation of a human right…." The letter gave notice of Plaintiff's lawsuit for "exemplary damages" of a high value for each day that he is subjected to a *Star Chamber* seal, and the letter quoted from *Levy v. Weksel*, 143 F.R.D. 54, 56 (S.D.N.Y. 1992) (Vincent Broderick, U.S.D.J.):

> Without such routine exposure to the sunshine of public scrutiny, what is sometimes called the "least dangerous branch" might tend to acquire or to appear to acquire unfortunate aspects of the *Star Chamber* courts of old, contrary to the spirit of the First Amendment … and the public trial concept specifically vouchsafed in criminal cases by the Sixth Amendment but relevant in civil cases as well. ***Indeed Article 10 of the United Nations Universal Declaration of Human Rights, the development of which was led by the United States and which was adopted by the General Assembly on December 10, 1948, states: "Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations...." No justification for the equivalent of a closed trial has been established in this civil securities fraud case.***

29. The filed letter **did *not* deter** any of the Defendants sued, all of whom have refused to prevent the continuation of the sealed proceedings consistent with the alleged aiding and abetting among the private Defendants and public actors acting "under the color of State law" – Ostrager and the persons entitled the "Court Administration" by Ostrager. *See* Exhibit A (Doc. No. 169) (*post hoc* order by Ostrager falsely claiming the "Court Administration directed" sealing the entire "file" based on "inflammatory and threatening … filings by plaintiff") (without specifying any such filings because ***no*** such "***filings*** by plaintiff" exist).

**FIRST CAUSE OF ACTION:**
**CIVIL ACTION FOR DEPRIVATION OF RIGHTS**
**(42 U.S.C. § 1983) (Aiding & Abetting)**
**(as to all named defendants and DOES 1 through 10)**

30. Plaintiff repeats and re-alleges each of the allegations set forth above.

31. From no later than October 8, 2020, and continuing through the date of this Complaint, all of the private and public defendants knowingly and willfully aided and abetted each other in the violation of rights under the First Amendment and the Due Process Clause of the 14th Amendment to the U.S. Constitution.

32. All of the Defendants, in aiding and abetting each other, acted under color of State law and caused the deprivation of Plaintiff's constitutional rights, which damaged Plaintiff in an amount of no less than $7Million.

33. The aiding and abetting among all of the Defendants also diminished public confidence in the judiciary with wanton disregard for public rights.

34. Plaintiff is entitled to "exemplary damages" to accomplish specific and general deterrence against the present and future deprivation of civil rights. Plaintiff suggests a very high value of exemplary damages must be set for each day that he is subjected to *Star Chamber* proceedings, as a nominal sum would have no specific or general deterrent effect on high net worth defendants, like BOA, Schoeman, Kaufman, Larizza, Grigsby, Bernstein, and Ostrager.

35. Plaintiff is entitled to attorney's fees and costs. *See* 42 U.S.C. § 1988(b) (in any action brought against a judicial officer for an act or omission taken in his judicial capacity, the officer shall not be held liable for costs, including attorney's fees, "unless such action was clearly in excess of such officer's jurisdiction").

**<u>SECOND CAUSE OF ACTION:</u>**
**ALIEN'S ACTION FOR TORT**
**(28 U.S.C. § 1350)**
**(as to all named defendants and DOES 1 through 10)**

36. Plaintiff repeats and re-alleges each of the allegations set forth above.

37. To the extent that Plaintiff's Brazilian birth qualifies him as an "alien," the "fraud on the court" embodied in Officers of the Court sealing an entire case without any cause and based on a falsehood ("threatening … filings by plaintiff"), deprived an alien of "fair and public" process in violation of the Law of Nations, *see* Article 10 of the "United Nations Universal Declaration of Human Rights" ("Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations...."), which damaged Plaintiff in an amount of no less than $7Million.

38. The "fraud on the court" committed also diminished public confidence in the judiciary with wanton disregard for public rights. Plaintiff is entitled to "exemplary damages" to accomplish specific and general deterrence against the present and future human rights violations. Plaintiff suggests a very high value of exemplary damages must be set for each day he is subjected to *Star Chamber* proceedings, as a nominal sum would have no specific or general deterrent effect on high net worth defendants, like BOA, Schoeman, Kaufman, Larizza, Grigsby, Bernstein and Ostrager.

39. 28 U.S.C. § 1350 ("Alien's Action for Tort") provides: "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the Law of Nations or a Treaty of the United States."

## <u>THIRD CAUSE OF ACTION:</u>
## FRAUD ON THE COURT
## (as to all named defendants and DOES 1 through 10)

40. Plaintiff repeats and re-alleges each of the allegations set forth above.

41. The fraudulent acts "defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *See Kupferman v. Consolidated Research and Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (formulation of "fraud on the court" accepted by this Circuit).

(a) the order sealing the case without any cause, one day after the Plaintiff requested full disclosure of extrajudicial relationships, was an overt act of fraud. *See* Exhibit A (Doc. 141) (9/2/20).

(b) the *post hoc* order falsely claiming that the "Court Administration" directed sealing the entire "file" due to ***non-existent*** "threatening… filings" was an overt act of fraud. *See* Exhibit A (Doc. 169) (10/8/20).

(c) the oppositions filed by Schoeman, Kaufman, Larizza, and Bernstein, on behalf of BOA and Grigsby, knowingly relying on the falsehood in Doc. 169 were overt acts of fraud. (10/16/20).

(d) all orders by Ostrager after instituting *Star Chamber* proceedings were overt acts of fraud, including but not limited to the dismissal of Plaintiff's suit by ignoring a document by his own law partner's relative, Senator Renan Calheiros, *which particularized the guarantee structure contributed by Plaintiff*, and by also ignoring the press release of "Special Counsel" for BOA (Milbank), hired on all of the deals at issue, which described the credit agreements with Brazilian states as unprecedented.

(e) Schoeman, Kaufman, Larizza, and Bernstein, on behalf of BOA and Grigsby, have all aided and abetted all acts of fraud committed by state actors and deliberately failed to prevent the continuation of *Star Chamber* proceedings.

42. *Star Chamber* proceedings sealed to the public based upon a falsehood established by the documentary evidence is a flagrant "fraud on the court" which damaged Plaintiff in an amount of no less than $7Million.

43. The "fraud on the court" committed also diminished public confidence in the judiciary with wanton disregard for public rights. The Plaintiff is entitled to "exemplary damages" to achieve specific and general deterrence against the

present and future "frauds on the court." Plaintiff suggests a very high value of exemplary damages must be set for each day he is subjected to *Star Chamber* proceedings, as a nominal sum would have no specific or general deterrent effect on high net worth defendants, like BOA, Schoeman, Kaufman, Larizza, Grigsby, Bernstein, and Ostrager. The malicious conduct of all these calloused defendants has caused intense emotional pain and suffering leaving Plaintiff feeling anger and depression as a victim of flagrant dehumanization.

## DEMAND FOR JURY TRIAL

44. Plaintiff demands a jury trial as to all issues so triable, but he reserves the right to request a bench trial as to the requested "exemplary damages."

## PRAYER FOR RELIEF

45. Plaintiff prays for a final judgment against all of the Defendants, and each of them, for compensatory damages of $7 Million (seven million dollars) and exemplary damages for each day he has been subjected to a *Star Chamber* in wanton disregard of both constitutional and universally recognized human rights. Plaintiff also prays for attorney's fees, the costs of this lawsuit, and any other relief, including injunctive and declaratory relief, as this Court deems appropriate.

Respectfully submitted,

_________/s/_________
Alexander Moskovits

(VERIFICATION AND CONTACT INFORMATION ON NEXT PAGE)

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that all of the foregoing facts averred in this Verified Complaint are true and correct.


___________/s/_________________
Alexander Moskovits
Caixa Postal 108
Garopaba, Santa Catarina
CEP 88495-000 BRASIL
+55(48)98465-9211 (WhatsApp)
alexander.moskovits@hotmail.com